IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

GARY WALL,                              )
                                        )
              Plaintiff,                )       Civil Action No. 7:17cv00385
                                        )
v.                                      )       **MEMORANDUM OPINION**
                                        )
E. RASNICK, *et al.*,                   )       By: Hon. Thomas T. Cullen
                                        )           United States District Judge
              Defendants.               )

This 42 U.S.C. § 1983 claim was referred to the Honorable Pamela Sargent, United States Magistrate Judge, for proposed findings of fact and a recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge filed a report and recommendation ("R&R") on May 17, 2019, recommending that judgment be entered for all defendants on all counts, and that judgment be entered for defendants/counter-plaintiffs Rasnick and Hicks on their counterclaims for assault and battery, including an award of punitive damages. Plaintiff Gary Wall has filed objections to the R&R and this matter is now ripe for the court's consideration.

I.

This action arises from a violent confrontation that occurred while plaintiff Wall was an inmate at Red Onion State Prison ("ROSP"). On August 14, 2015, during recreation in the A-1 pod at ROSP, Wall crossed a red line into a restricted area in order to place an item outside his cell door. (*See* ECF 87 at 1, 19.) Seeing this, the control booth officer—Holbrook—instructed Wall to lock down in his cell. (*See id.* at 2, 18.) Before Wall could reach his cell,

another correctional officer, Hicks, instead ordered Wall to enter the pod vestibule. (*See id.* at 2, 13.) Officer Rasnick joined Officer Hicks and the two began escorting Wall to the vestibule, but a struggle broke out while they were in the "blind spot" of the only rapid-eye camera in the area. (*See id.* at 2, 20.) While the three struggled, Officers Lyall and Large entered the pod and aided in the effort to subdue Wall. During the struggle, Large sprayed Wall with oleoresin capsicum ("OC") spray. (*See id.* at 2, 35.) Eventually, Wall was subdued and escorted from the building by Officers Dockery and Gwinn. (*See id.* at 3, 35.)

Officers Dockery and Gwinn escorted Wall from A Building to B building, where they were replaced by Officers Akers and Taylor. Wall was placed in cell B-308, where officers applied a spit mask to his face and placed him in five-point restraints. At no point was he decontaminated from the OC spray administered during the earlier altercation. He was released from the restraints later that evening, placed in a transport van, and transferred to Wallens Ridge State Prison.

Wall and the officers disagree on how he was treated after he was restrained in the A-1 pod. Wall testified that Officers Hicks, Rasnick, Lyall, and Large beat him into unconsciousness and dragged him from the building. (*See* ECF No. 108 at 30, 32.) He also said that Officers Gwinn and Taylor repeatedly assaulted him while transferring him from A building to B building. (*See id.* at 33.) He testified that they brought him to B Building and placed him against a wall for five or ten minutes while various officers passed and hit him. (*See id.* at 35–36.) Finally, he told the court that he remained unconscious while in restraints and thus was unable to request medical care. (*See id.* at 38.)

The officers dispute all of Wall's accusations. They testified that Wall was conscious and resisting throughout the entire incident but that the transfer from A building to B building was otherwise uneventful. (*See* ECF Nos. 94 at 58–62, 90–94, 152–154; 108 at 263.) Every officer present also agreed that Wall was conscious at all times. (*See* ECF Nos. 94 at 80, 93–94; 108 at 263.) They acknowledge that Wall was placed in restraints and a spit mask in a cell and was not decontaminated from the OC spray, but note that he was seen by a nurse and was conscious. (*See* ECF No. 94 at 113–114, 154–55.)

Wall's injuries during the incident consisted of being sprayed with OC spray, cuts on his wrists, and bruising across much of his face and torso. (*See* ECF 87 at 6–7.) Officer Hicks suffered a fractured wrist and Officer Rasnick suffered a torn meniscus in his right knee, which required surgical repair.

As a result of the incident, Wall was charged with five disciplinary infractions: disobeying an order, being in an unauthorized area, approaching others in a threatening manner, and two assaults. (*See id.* at 4, 6.) He was found guilty of all five and received 15 days of segregation for disobeying an order (*see id.* at 15), a $5.00 fine for being in an unauthorized area (*see id.* at 17), 30 days of segregation for approaching in a threatening manner (*see id.* at 13), and 90- and 180-day losses of good time for the assaults (*see id.* at 8, 11.) As part of his hearings and appeals, Wall repeatedly requested that the Hearings Officer review video footage of the incident. His requests for the evidence were all denied. (*See id.* at 9, 12, 14, 16.)

Wall has now brought a § 1983 action against everyone involved in the incident. The defendants in his action are 20 correctional officers at Red Onion State Prison (E. Rasnick, J. Hicks, E. Hess, C. Holbrook, T. Large, J. Lyall, C. Dockery, E. Gwinn, A. Mullins, J.

Testerman, M. Addington, L. Bryant, C. Bishop, B. Akers, S. Taylor, L. Collins, D. Still, B. Hughes, K. McCoy, and W. Church), a nurse at the prison (J. Deel), a counselor at the prison (O. Rose), two hearings officers (C. Franks and W. Hensley), the warden of Red Onion (E. Barksdale), the Warden of Wallens Ridge State Prison (L. Fleming), the Western Regional Administrator for the Virginia Department of Corrections (H. Ponton), and the Director of the Virginia Department of Corrections (H. Clarke). His federal claims consist of:

1. A claim based on allegations of the use of excessive force by Defendants Rasnick, Hicks, Lyall, and Large for the August 14, 2015, altercation and use of OC pepper spray;

2. A claim based on allegations of the use of excessive force and/or bystander liability by Defendants Lyall, Large, Akers, Collins, Taylor, Bishop, Testerman, Addington, Dockery, Gwinn, and Mullins during the escort from A Building to B Building and being placed in restraints without decontamination;

3. A claim based on allegations of cruel and unusual punishment by Collins, Bishop, Akers, Taylor, Deel, and Barksdale for placing Wall in restraints for four hours without medical attention;

4. A claim against Barksdale, Fleming, and Ponton for allowing pervasive constitutional violations;

5. A claim alleging deliberate indifference to serious medical needs by Collins, Bishop, Akers, Taylor, Deel, and Barksdale for placing Wall in restraints for four hours without medical attention;

6. A claim alleging a violation of substantive due process rights by Hicks, Holbrook, and Still for filing false disciplinary charges;

7. A claim alleging violation of procedural due process rights by Franks, Hensley, Fleming, and Ponton for failing to retrieve the video evidence for his disciplinary charge hearings; and

8. A claim alleging that Rasnick, Hicks, Collins, Akers, and Taylor conspired to use excessive force against him.

Wall has also brought three state law claims:

1. A claim under Virginia state law alleging an assault by Rasnick, Hicks, Large, Lyall, Collins, Taylor, Akers, Bishop, Dockery, and Gwinn based on the use of excessive force and placing him in restraints;

2. A claim under Virginia state law alleging abuse of process by McCoy and Church based on their generating disciplinary reports for ROSP after Wall's transfer to Wallens Ridge; and

3. A claim under Virginia state law against all defendants alleging negligence and willful and wanton negligence.

Officers Rasnick and Hicks filed counterclaims for common-law assault and battery against Wall.

## II.

The magistrate judge held a bench trial in this matter and has submitted a Report and Recommendation detailing her findings and conclusions. The magistrate judge recommends that judgment be entered for all defendants on all of Wall's claims and that judgment be entered for counter-plaintiffs Rasnick and Hicks with an award of $20,000 in compensatory damages and $20,000 in punitive damages. (*See* ECF 87 at 65–67.)

Wall has submitted objections to the magistrate's recommendations under Federal Rule of Civil Procedure 72(b), which requires this court to review de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. *Diprospero v. Colvin*, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting *Howard Yellow Cabs. Inc. v.*

*United States*, 987 F. Supp. 469, 474 (W.D.N.C. 1997); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th

Cir. 1982)). "The court will not consider those objections by the plaintiff that are merely

conclusory or attempt to object to the entirety of the Report, without focusing the court's

attention on specific errors therein." *Camper v. Comm'r of Soc. Sec.*, No. 4:08cv69, 2009 WL

9044111, at *2 (E.D. Va. 2009), *aff'd*, 373 F. App'x 346 (4th Cir.); *see Midgette*, 478 F.3d at 621

("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues

addressed by the magistrate judge; it contemplates that a party's objection to a magistrate

judge's report be specific and particularized, as the statute directs the district court to review

only 'those portions of the report or specified proposed findings or recommendations to

which objection is made.'"). Such general objections "have the same effect as a failure to

object, or as a waiver of such objection." *Moon v. BWX Technologies*, 742 F. Supp. 2d 827, 829

(W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012). See also *Arn*, 474 U.S. at 154 ("[T]he

statute does not require the judge to review an issue de novo if no objections are filed....").

Rehashing arguments raised before the magistrate judge does not comply with the

requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed,

objections that simply reiterate arguments raised before the magistrate judge are considered to

be general objections to the entirety of the report and recommendation. *See Veney v. Astrue*,

539 F. Supp. 2d 841, 844–45 (W.D. Va. 2008).

Under this standard, Wall has raised four valid objections: first, he objects to the

magistrate judge's legal conclusion that a $5.00 fine is insufficient to trigger due process

protections (*see* ECF No. 91 at 3); second, he objects to the legal conclusion that denial of his

requests to review video footage at his disciplinary hearings did not violate due process (*see*

*id.*); third, he objects to the magistrate judge's factual findings with respect to his Eighth Amendment claims (*see id.* at 3–5); and finally, he objects to the magistrate judge's factual findings and legal conclusions with respect to the counter-plaintiffs' suit for battery (*see id.* at 5). A de novo review of the magistrate judge's report and recommendation reveals that none of these objections has merit.

First, the magistrate judge correctly concluded that Wall's fine does not implicate the Due Process Clause. Where a prisoner's punishment does not cause his sentence to be enhanced, a protected liberty interest will generally only exist where the punishment "imposes atypical and significant hardship" compared to the normal incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). To perform the "atypical and significant" analysis, the court identifies the "ordinary incidents of prison life" for the particular inmate and then determines whether the alleged violation imposes an atypical and significant hardship in relation to those incidents. *See Prieto v. Clarke*, 780 F.3d 245, 252 (4th Cir. 2015). As this court has acknowledged on many occasions, small fines levied against a Virginia state prisoner do not impose such a hardship and therefore do not implicate the Due Process Clause. *See e.g., Bratcher v. Mathena*, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016); *Hewlett v. Goode,* No. 7:20-CV-00494, 2020 WL 6136849, at *2 n.2 (W.D. Va. Oct. 19, 2020) (collecting cases). Therefore, Wall cannot bring a Due Process challenge to his disciplinary conviction for being in an unauthorized area.

For the same reason, denial of Wall's requests to view video footage at his disciplinary hearing did not violate his due process rights. Wall alleges that as part of the hearing process for his disciplinary convictions, he requested to view the video evidence relevant to his claims.

He says that his requests were repeatedly denied and alleges that this violated his right to due process. (*See* ECF No. 91 at 3.) Wall acknowledges in his objections that he only objects to the magistrate judge's findings with respect to his disciplinary convictions that resulted in either administrative segregation or a fine. (*See* ECF No. 91 at 3.) As the court noted above, de minimis fines like the one imposed on Wall do not implicate the Due Process Clause. Therefore, Wall has no constitutional claim with respect to the denial of his requests for evidence with respect to the disciplinary conviction that resulted in a fine.

Short stays in disciplinary segregation, like small fines, do not implicate the Due Process Clause. Changes "in a prisoner's location, variations of daily routing, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). *Sandin* itself held that 30 days of disciplinary segregation did not implicate the Due Process Clause because such segregation does not impose a significant or atypical hardship. *See Sandin,* 515 U.S. at 486. In keeping with this ruling, the Fourth Circuit has held that a period of segregation as long as six months may not implicate the Due Process Clause depending on the specific conditions of confinement, *see Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997), and this court has held on numerous occasions that disciplinary segregation for relatively short periods of time does not implicate an inmate's due process rights, *see e.g., Proctor v. Edmonds*, No. 7:18-CV-00087, 2020 WL 2312036, at *2 (W.D. Va. May 8, 2020); *Bratcher v. Mathena*, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016). Wall alleges no particularly onerous conditions related to his 45 days in disciplinary segregation and therefore had no due process rights at

stake when that segregation was imposed. Because neither the $5.00 fine nor the 45 days in segregation implicate the Due Process Clause, the prison's decision to withhold video footage when holding hearings related to those conditions does not violate the Constitution.

Wall's final two objections center on the magistrate judge's factual findings. Although these objections strongly resemble a mere rehashing of his arguments a trial, the court will review the findings to determine whether they were proper. Wall's first objection is to the magistrate's factual findings related to his Eighth Amendment claims. He contests the conclusions that he initiated the initial conflict with officers Hicks and Rasnick and that their use of force was justified. He also contests the findings regarding the events that followed, specifically the findings that resulted in the magistrate determining that failure to decontaminate him from OC spray was not malicious or wanton.

The magistrate judge's findings with respect to Wall's excessive force claims were proper based on the evidence in the record. Wall's account of his altercation with the prison guards is simply not credible in light of the overwhelming conflicting evidence. He testified that Officer Rasnick began the altercation by grabbing Wall's arm and punching him in the face. (ECF No. 108 at 29.) He then claimed that Hick's tackled him to the ground where the guards continued to beat him while he attempted to assume a nonthreatening position. (*Id.*) He told the court that he was cuffed and compliant by the time the vestibule door opened to allow the other officers to join the encounter, at which time they sprayed him with OC spray and beat him into unconsciousness. (*Id.* at 29–31.) All four guards involved in the encounter— Rasnick, Hicks, Large, and Lyall—contradicted this account on all points. Rasnick and Hicks testified that Wall resisted their orders and began the physical altercation when they attempted

to subdue him. (*See* ECF Nos. 94 at 36; 108 at 239–240.) All four officers agreed that Wall was unrestrained and actively resisting when Lyall and Large entered through the vestibule door and utilized OC spray. (*See* ECF Nos. 94 at 58–62, 90–91, 152–154; 108 at 263.) Every officer present also agreed that Wall never lapsed into unconsciousness. (*See* ECF Nos. 94 at 80, 93–94; 108 at 263.)

Video evidence corroborates the officers' account. Although there is no video of the start of the fight, video shows Wall on his feet and actively resisting when the vestibule door opens. (*See* Plaintiff's Exhibit No. 13, A123 Vestibule at 4:01:03–4:01:36) It depicts all four officers struggle with Wall and eventually subdue him. (*Id.*) Additionally, further video shows that Wall was not punched or struck while he was restrained, although there are periods of time not covered by the recordings. (*See generally* Plaintiff's Exhibit No. 14.) Based on this evidence, the magistrate correctly determined that Wall's version of events was not credible. His account is contradicted by four credible witnesses and the video recordings of the incident. Thus, the magistrate's finding that Wall initiated the altercation was correct, as was her subsequent holding (that Wall does not explicitly challenge) that the officer's use of force was subjectively reasonable.

Wall also objects to the magistrate's finding that the decision not to decontaminate him from OC spray was not malicious or wanton and therefore didn't violate the Eighth Amendment. Wall argues that the decision not to decontaminate him before placing him in restraints constituted excessive force. He acknowledges that he never requested decontamination but argues that this was because he was unconscious when placed in restraints and examined by the nurse. The Eighth Amendment protects inmates from "cruel

and unusual punishment," which includes deliberate indifference to medical needs and the use of excessive force, both of which Wall alleges. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To succeed on an Eighth Amendment deliberate indifference claim, an inmate must demonstrate that the injury suffered was objectively serious and that a prison official was aware of the risk of injury and recognized that his actions to prevent it were insufficient. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The elements of an Eighth Amendment excessive force claim are the same, but the required mental state of the prison official is more difficult to prove. Instead of mere deliberate indifference, a plaintiff arguing excessive force must show that the prison official used force "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986).

The record evidence validates the magistrate judge's determination that the prison officials who observed Wall were not subjectively aware that their choice not to decontaminate him caused him harm. Officers Collins and Large testified that Wall was conscious and refused to answer them when they asked if he required decontamination. (*See* ECF No. 94 at 113–114, 154–55.) Their account is corroborated by the account of Nurse Deel, who examined Wall after he was placed in restraints. She testified that he was conscious and that she did not believe he required decontamination. (*See id.* at 203.) Video from the incident shows Wall in restraints and he does not appear to be showing typical symptoms associated with OC spray (coughing or trouble breathing), and he does not request any decontamination during the recording despite being asked if he had any complaints for the nurses to address. (*See* Plaintiff's Exhibit No. 14 at 16:00–17:00.) As the magistrate judge noted, even assuming that Wall's injuries as a

result of not being decontaminated were objectively serious, nothing in record establishes that the prison officials were aware of that fact. Nothing Wall did or said would have given anyone present the impression that their actions were creating a substantial risk of injury. He implicitly declined decontamination when asked and showed no signs of needing it when examined. Thus, he has failed to make an Eighth Amendment deliberate indifference claim with respect to the failure to decontaminate him from OC spray.

Finally, the magistrate correctly determined that Wall battered officers Hicks and Rasnick under Virginia law. Virginia applies the common-law definitions of assault and battery. *See Clark v. Commonwealth*, 691 S.E.2d 786, 788–789 (Va. 2010). Under those definitions, Wall committed an assault if he engaged in "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery" *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003), and committed a battery if he engaged in "an unwanted touching which is neither consented to, excused, nor justified. *See Washburn v. Klara*, 561 S.E.2d 682 (Va. 2002); *Woodbury v. Courtney*, 391 S.E.2d 293 (Va. 1990). The Fourth Circuit has summarized Virginia battery law as holding that "the slightest touching of another, or of his clothes, or cane, or anything else attached to his person, if done in a rude, insolent or angry manner constitutes a battery." *Park v. Shiflett*, 250 F.3d 843, 852 (4th Cir. 2001) (citing *Crosswhite v. Barnes*, 124 S.E. 242, 243 (Va. 1924)). The evidence clearly shows that Wall assaulted and battered officers Hicks and Rasnick. As summarized above, the record demonstrates that Wall initiated the altercation with the officers by resisting their attempts to restrain him and escalated the conflict by striking both officers. This is assault and battery in its plainest form.

But the court will decline to adopt the magistrate judge's recommendation to assess punitive damages based on these assaults and batteries. There are no facts in the record showing that Wall acted with malicious intent above and beyond a run-of-the-mill battery case. Additionally, his financial condition and attendant inability to pay—a relevant consideration under Virginia law, *see Baldwin v. McConnell*, 643 S.E.2d 703, 707 (2007)—counsels against any award of punitive damages, much less one of this magnitude. Wall will already be saddled with $40,000 in compensatory damages. Given his indigent status, any additional damages are unlikely to add to the deterrent effect of the award.

## III.

The magistrate judge's report and recommendation will be adopted in all respects aside from its recommendation of punitive damages. Wall's due process objections fail because he had no due process rights at stake in his disciplinary hearings; his Eighth Amendment objections fail because the evidence demonstrates that the relevant prison officials were not aware of any serious harm to Wall; and his state-law objections fail because the record demonstrates that he initiated the physical altercation and therefore assaulted and battered Officers Hicks and Rasnick. The court will issue an order entering judgment for all defendants and for counter-plaintiffs Hicks and Rasnick with an award of $20,000 each in compensatory damages.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Wall, all counsel of record, and Magistrate Judge Sargent.

**ENTERED** this 23rd day of March, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE