**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE  DIVISION**

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

August 02, 2024

LAURA A. AUSTIN, CLERK
BY:
        s/A. Beeson
        DEPUTY CLERK

|  |  |  |
|---|---|---|
| **GARY WALL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:17CV00385 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **E. RASNICK, Correctional Officer of** | ) | JUDGE JAMES P. JONES |
| **R.O.S.P., ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

*Kathryn Ali, Elizabeth Lockwood, and Meghan Palmer,* ALI & LOCKWOOD LLP, *Washington, D.C., for Plaintiff and Counterclaim Defendant; Margaret Hoehl O'Shea, Assistant Attorney General of Virginia,* OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, for Defendants and Counterclaim Plaintiffs.*

In this action under 42 U.S.C § 1983 by a state prisoner, the court is presented with objections by the parties to rulings and recommendations by the magistrate judge.  For the reasons set forth, I will deny the objections and enter judgment for the defendants.

## I.  BACKGROUND.

This case involves an altercation involving Gary Wall, an inmate at Virginia's maximum security Red Onion State Prison.  On the afternoon of August 14, 2015, a control booth officer believed he saw Wall attempting to place something in someone's else cell, a violation of prison rules. (Wall claims that he was placing an empty jar of peanut butter outside his own cell.).  Officers Rasnick and Hicks responded

and ordered Wall into his cell.  Wall refused, cursing the officers.  When the officers then tried to handcuff him, Wall resisted, struck an officer with his fist, and a fight ensued between Wall and the officers.  Another officer sprayed Wall in the face with oleoresin capsicum (OC) in order to pacify him.  Officers were finally able to take him out of the A-Building where he resided and across the prison compound to the B-Building.  Officers then placed Wall in five-point restraints and a spit mask.  He was placed in a cell in the restraints, where he remained for approximately three hours.

The officers and Wall present a very different account of the events that occurred during the escort between the buildings.  According to Wall, he was beaten into unconsciousness and dragged to the new building, with the officers purposefully running him into steel fence poles every few feet.  The alleged abuse continued after he reached the new building.   He claims that he remained mostly unconscious and did not receive any medical care and was not decontamination from the OC spray.

According to the officers involved, Wall's claims are untrue.  They testified that Wall was conscious and resisting during the entire escort and that no abuse occurred.  Additionally, he was seen by a nurse in the B-Building, although it was agreed that he was not decontaminated from the OC spray.  The officers testified that any force used throughout the events were only used in response to Wall's aggression.

As a result of the incident, Officer Hicks suffered a broken right hand and required three stiches over his eye.  Officer Rasnick sustained a torn meniscus in his right knee resulting in surgery.  Both officers testified that their anxiety over the incident played a large role in causing them to quit their employment at the prison. Wall's injuries consisted of the OC spray, a bloody nose, bruising on his face and body, and cuts on his wrists and ankles.

Wall was charged in state court based on the altercation and his criminal defense attorney showed him videos taken from the prison's security cameras, including some videos that were later recorded over by the prison.  The attorney later died, and his file was destroyed.

Wall brought this lawsuit, initially pro se, against correctional officers, prison supervisors, and other state officials, under § 1983 and state tort law.[1]  Officers Rasnick and Hicks filed a counterclaim against Wall based on their injuries.  There being no jury demand, the case was referred to United States Magistrate Judge Pamela Meade Sargent to determine and recommend an appropriate disposition. Following a two-day bench trial at which Wall represented himself, Judge Sargent issued a Report and Recommendation (R. & R.) suggesting dismissal of all of Wall's

---

[1]  Wall sued 31 defendants, including correctional officers, an inmate counselor, inmate hearing officers, the Warden, the Western Regional Administrator, and the Director of the Virginia Department of Corrections (VDOC).

claims and a money judgment against Wall in favor of officers Rasnick and Hicks.
*Wall v. Rasnick*, No. 7:17CV00385, 2019 WL 11879024 (W.D. Va. May 17, 2019).
Based on the magistrate judge's findings, the district judge denied Wall's objections
to the R. & R. and entered judgment against him.   *Wall v. Rasnick*, No.
7:17CV00385, 2021 WL 1134685 (W.D. Va. Mar. 23, 2021).[2]

Wall appealed and obtained counsel.  The court of appeals found that the
district judge had failed to explicitly rule on objections by Wall to Judge Sargent's
denial of his motions for sanctions.  The motions were based on the prison's failure
to preserve certain of the security camera recordings.  *Wall v. Rasnick*, 42 F.4th 214,
223 (4th Cir. 2022). The court of appeals accordingly vacated the judgment and
remanded the case for "a full hearing on the spoliation issues." *Id.*

The case was then assigned to me.  In accord with the direction of the court
of appeals, I referred the spoliation motions, ECF Nos. 75 and 77, to Magistrate
Judge Sargent for the hearing and determination.  Order, Aug. 23, 2022, ECF No.
135.   Judge Sargent held a two-day evidentiary hearing, this time with Wall
represented by counsel. She issued a lengthy opinion, *Wall v. Rasnick*, No.
7:17CV000385, 2023 WL 7490862 (W.D. Va. Nov. 13, 2023), finding that the
prison authorities had received sufficient notice to have preserved certain of the lost

---

[2]   The district judge did not accept the recommendation that punitive damages be
awarded against Wall.  However, such damages are again included in the present R. & R.

videos which related to the move to B-Building.  She found that this loss had

prejudiced Wall "in that [the recordings] would either corroborate or contradict the

testimony of the defendants, impacting their credibility or the claims he may

pursue."  *Id*. at *38.  As a remedy, she granted the motions "only insofar as [the

court] will not consider any evidence offered with regard to the content of the lost

video recordings."  Order, Nov. 13, 2023, ECF No. 154.  In particular, Judge Sargent

determined that she "would not consider the testimony or reports of [a prison

investigator] that he had reviewed the missing video evidence and that it did not

support Wall's claim."  R. & R. 3, November 13, ECF No. 155.

In addition to the determination of the spoliation issue, Judge Sargent entered

a new R. & R on the merits of the lawsuit, substantially the same as issued by her in

2019.

Both Wall and the defendants have timely objected to the magistrate judge's

order ruling on spoliation.  In addition, Wall has timely objected to the magistrate

judge's R. & R.  These objections have been fully briefed and are ripe for decision.

Transcripts of the original bench trial and the later evidentiary hearing on the

spoliation motions have been reviewed.[3]

---

[3] In light of the extensive record and briefing in this case, and pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 11(b), the matters will be determined without an oral hearing.

## II. THE SPOLIATION ISSUE.

When reviewing timely objections to the findings of a magistrate judge in a nondispositive matter, the "district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Both Wall and the defendants object to Judge Sargent's rulings on the motions asserting spoliation. Wall contends that the magistrate judge was clearly erroneous in her findings (1) that VDOC did not intend to deprive him of the video evidence when it was not preserved and (2) that Wall did not prove what the lost video evidence would have shown. In addition, Wall objects (3) that the spoliation sanction imposed on the defendants was insufficient. Pl. Objs. i, 1–2, ECF No. 163.

The defendants object to the rulings that (1) Wall carried his burden of proving that the individual defendants, as opposed to the VDOC generally, had a duty to preserve the videos, and (2) the uncontroverted evidence proved that the contents of the lost video were favorable to the plaintiff. Defs.' Objs. 1–2, ECF No. 164.

After careful consideration of the record, I find that all of the objections to the spoliation rulings by the magistrate judge must be overruled. The plaintiff's objections are largely fact-based, and the applicable standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *United States v. Heyer,*

740 F.3d 284, 292 (4th Cir. 2014) (considering district court's factual findings on appeal) (internal quotation marks and citation omitted).  I agree with the defendants that it was not clearly erroneous for the magistrate judge to find that the failure to preserve the videos, while it was prejudicial to Walls, was not done with an intent to deprive him of such evidence, thus justifying a more onerous sanction.  I further agree that the sanction imposed, based on all of the circumstances as found by Judge Sargent, was not contrary to law.

As to the defendants' objections, they fare no better.  I find that it was not error for Judge Sargent to hold all defendants liable for sanctions for the institution's failure to preserve the missing videos.  As the court of appeals noted in this case, such imputation requires a "fact-intensive inquiry" on a case-by-case basis.  *Wall*, 42 F.4th at 222 n.7.  I find that the magistrate judge's ruling satisfied that requirement.  In addition, the magistrate judge's rationale for finding prejudice was supported by the facts found.

### III.   OBJECTIONS TO THE REPORT AND RECOMMENDATION.

Plaintiff Wall has also submitted objections to the R. & R. issued by Judge Sargent.  His objections are as follows:  (1) that the magistrate judge erred in finding that Wall had not exhausted his administrative remedies as to his claims involving his move to B-Building and the alleged abuse there; (2) that because of the erroneous exhaustion ruling, she erred in disregarding those claims as it affected her credibility

rulings and weighting of the evidence; (3) the magistrate judge used an erroneous

legal standard for the state law claims; and (4) she made factual errors in determining

the counterclaims.

### A.  *Exhaustion of Administrative Remedies.*

I find that the magistrate judge did not clearly err in finding that Wall did not

fully exhaust his administrative remedies as to his claims that he was "run into metal

poles while being escorted to the B building, that an officer had smashed his head

into the wall in the B building vestibule and that he was denied medical care after

losing consciousness."  R. & R. 100, Nov. 13, 2023, ECF No. 155.[4]

The failure to exhaust under the Prison Litigation Reform Act is an affirmative

defense that a defendant must raise and prove.  *Custis v. Davis*, 851 F.3d 358, 361

(4th Cir. 2017).  Proper exhaustion requires "compliance with an agency's deadlines

and other critical procedural rules because no adjudicative system can function

effectively without imposing some orderly structure on the course of its

proceedings."  *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

Under VDOC's grievance procedures, actions of individual employees are

grievable by the prisoner.  Pl.'s Ex. 48, Operating Proc. 866.1 at 5, ECF No. 152-7.

To be sufficient, a grievance must "alert the prison to the nature of the wrong for

---

[4]  The recommendation regarding administrative exhaustion is the only
recommendation by the magistrate judge different from those made in the earlier R. & R.

which redress is sought." *Wilcox v. Brown*, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (citation and alteration omitted).

Although Wall contends that his request for video footage could have only been relevant to the escort claims, this is an insufficient basis upon which to conclude that Wall gave fair notice to the prison in his original grievance for the escort claims. While Wall's requests for the footage does suffice for purposes of spoliation, it does not suffice for purposes of exhaustion. The goal of exhaustion is fundamentally different from spoliation. Whereas spoliation concerns the creation of incentives to preserve evidence, exhaustion requires a fair opportunity to respond to alleged wrongs prior to litigation. The plaintiff's cited case law in support of such a grievance is unavailing because although prisoners need not include every detail of their claims in grievances, they must include the "principal allegation." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 296 (3d Cir. 2016). Although the plaintiff cites this out-of-circuit case for support, it is inapposite because the principal allegation referenced in that case was still more specific than Wall's claims regarding his escort from A-Building. This case is distinguishable from *Mack*. In *Mack*, the principal allegation was that the prisoner "was removed from his commissary position for a pretextual reason" and "[e]ven if Mack did not detail his allegedly protected speech, his grievance nonetheless notified officials that he believed he was unlawfully terminated . . . as retaliation for exercising his First Amendment rights." *Id*. at 296.

In contrast, Wall merely asked for video footage without specifying the nature

of those claims, at least until an investigative report was completed.  The remaining

question, then, is whether the investigative report received by VDOC in November

2015, cures the defect in Wall's grievance.  The report specifically explains that

"Wall stated that when he regained consciousness he was pushed into poles, doors

and walls while being escorted to Bravo building."  Pl.'s Ex. 12, Investigative Rep.

4, ECF No. 84-12.  Although it arguably could have been reasonable for Wall to

assume that additional claims from the investigation would be folded in with his

other claims, VDOC requires the filing of a grievance for *all* claims — even if a

plaintiff need not provide the precise details of each claim.  Thus, I find that the

magistrate judge's ruling was not contrary to law.[5]

Moreover, I decline to hold that the defendants waived their exhaustion

defense.  The plaintiff asserts that it was insufficient for the defendants to rely on

exhaustion as a boilerplate defense in their Answer and that they should not have the

---

[5]  Plaintiff's counsel has provided the court with a recent out-of-circuit opinion, *Williams v. Estelle Unit Prison Offs.*, No. 23-20036, 2024 WL 3026778 (5th Cir. June 17, 2024), which counsel contends is supportive of the principle that actual notice of possible wrongful conduct is sufficient to overcome a failure to follow the prison's grievance procedure.  In that case, the inmate filed grievances complaining that he had been the subject of a disciplinary case for refusing hand restraints in order to "cover up" excessive force involved in the matter. *Id.* at *4.  An investigation then transpired, resulting in his disciplinary charge being overturned.  The court held that because the grievances about the alleged cover-up referenced "identifying details" of the alleged excessive force and the prison authorities had investigated the matter, there had been sufficient exhaustion. *Id.* I disagree that this case is persuasive, in view of its facts.

opportunity to argue exhaustion because they did not present the defense at trial. The plaintiff cites no legal authority in favor of these propositions. The plaintiff should have been aware of the exhaustion defense from the Answer, and I do not find that exhaustion has been waived given its timely assertion.

### B. *Eighth Amendment Claims.*

The plaintiff asserts that the magistrate judge's analysis of his Eighth Amendment claims was tainted by her exhaustion ruling and findings of fact that contradicted the evidence. To prove the excessive use of force under the Eighth Amendment, the plaintiff must demonstrate that the force was both objectively and subjectively unreasonable. *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). The subjective component asks whether the officers acted with a culpable state of mind and requires "wantonness in the infliction of pain." *Id*. (internal quotation marks and citations omitted). Wantonness turns on whether force was applied for the purpose of maintaining or restoring discipline or for the purpose of maliciously causing harm. When making this assessment, courts consider (i) the need for application of force, (ii) the relationship between that need and the amount of force used, (iii) the threat reasonably perceived by the responsible officials, and (iv) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

As stated previously, I agree with the magistrate judge that Wall's injuries were nontrivial. In addition, I agree with the magistrate judge that at least some, and probably most, of Wall's testimony regarding his lack of provocation is not credible and is therefore discounted. No credible evidence exists to show that the officers continued to unlawfully kick and punch him even after he was restrained and removed from the pod. And as to the bending of Wall's hands, the officers testified that Wall repeatedly lunged forward while being escorted to the B building. This leaves the question of whether the force applied was subjectively unreasonable. For the reasons noted above regarding the injuries suffered by the officers and their testimony regarding Wall's resistance, I find that their use of force was appropriate and reasonable.

The magistrate judge held that Wall's exhausted claims are as follows, to be decided on the merits:

> [A]llegations of the use of excessive force by Defendants Rasnick, Hicks, Lyall and Large for the August 14, 2015, altercation and use of OC pepper spray and for his fingers being bent back during his escort and his state law assault claims based on these uses of force and his deliberate indifference claim for being placed in restraints without decontamination.

R. & R. 80, Nov. 13, 2023, ECF No. 155.

The claim that Wall was placed in restraints without decontamination, violating his Eighth Amendment rights, must also fail. The denial of medical treatment qualifies as deliberate indifference under the Eighth Amendment if the

officer knows of and disregards a serious medical need or risk thereof. *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994). To qualify as unconstitutional conduct, the officer must subjectively recognize both the serious medical need and the inappropriate nature of his actions in light of the risk. *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

According to the testimony of officers and a nurse, Wall did not request decontamination. Having reviewed the available videos, I cannot say that the magistrate judge erred in her conclusions that the force used on Wall was justified and reasonable. And as to the argument that the initial altercation between Wall and the officers could not account for the way in which every injury was sustained, that may be true. But it is irrelevant here because of my ruling on the nonexhaustion of certain of his claims. Thus, the officers acted reasonably, and judgment will be entered for the defendants on the Eighth Amendment claims.

### C. State Law Claims.

The magistrate judge's analysis of the plaintiff's state law claims was not contrary to law. The plaintiff asserted an assault claim against Rasnick, Hicks, Large, Lyall, Collins, Taylor, Akers, Bishop, Dockery, and Gwinn; an abuse of process claim against McCoy and Church based on their disciplinary reports; and a claim against all defendants alleging negligence and willful and wanton negligence.

Under Virginia common law, an assault occurs when a person engages in an overt act intended to inflict bodily harm, coupled with the present ability to inflict such harm, or engages in an overt act intended to place the victim in fear of bodily harm and creates a well-founded fear in the victim. *Bowie v. Murphy*, 624 S.E.2d 74, 80 (Va. 2006). Here, the officers were not acting with the purpose of causing Wall to be afraid. The evidence shows that they were acting with the intent to restraint him from causing further harm. Thus, the assault claim must fail.

### D. Defendants' Counterclaims.

Under Virginia law, a battery occurs when a person engages in the unwanted touching of another that is unjustified. *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). Hicks and Rasnick have asserted assault and battery claims against Wall. Wall argues that Hicks and Rasnick have not proven their case. As to Rasnick, he argues that the officer never reported intentional touching by Wall and that in his testimony, he disclaimed any battery. As to Hicks, he argues the testimony regarding punches was not credible and was later retracted by Hicks.

Wall testified that he had tussled with the officers and that he specifically touched Rasnick by attempting to fight him, though the plaintiff contends that this tussle was short-lived and should not affect the rest of the analysis. Though the additional context provided by the plaintiff's testimony regarding the incident is helpful, it is not enough to overcome the conclusion based on the officers' testimony

that Wall began a chain of events and continued his resistance in a way that caused harm to the officers. Hicks and Rasnick also testified that Wall was fighting with them. Additionally, Large testified that Wall was striking at the officers. Importantly, both Hicks and Rasnick suffered physical injuries as a result of Wall's fighting.

The plaintiff also contends that the magistrate judge erred in her assault finding, based upon her analysis that the battery provided a sufficient basis upon which to conclude that the officers suffered apprehension of an impermissibility touching. For the reasons stated above, the plaintiff's argument is erroneous as it relates to apprehension. The events would have caused the officers to fear incoming blows or other forms of resistance.

The same result does not follow for the magistrate judge's punitive damages recommendation. The goal of punitive damages is "to warn, not to compensate." *Coalson v. Canchola*, 754 S.E.2d 525, 528 (Va. 2014). "[T]here is no set standard for determining the amount of punitive damages" and thus, it is left to the discretion of the factfinder. *Id.* The lack of an ability to pay damages is an appropriate consideration under Virginia law where the defendant presents evidence of his inability to pay. *Condo. Servs., Inc. v. First Owners' Ass'n. of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 171 (Va. 2011).

Assuming Wall had the ability to pay such punitive damages, it is likely that I would sustain the recommendation to award them.  However, there is evidence before the court indicating the opposite.  Wall previously submitted a declaration noting that he is not able to work in prison and has no other income.  Wall Dec., Apr. 23, 2021, ECF No. 119.  Nor does he own property or other assets.  *Id.*  Accordingly, punitive damages would be inappropriate.

## IV.  CONCLUSION.

It is **ORDERED** as follows:

1. The Plaintiff's Objections to Order and Memorandum Opinion, ECF No. 163, are DENIED;

2. The Plaintiff's Objections to Report and Recommendation, ECF No. 162, are GRANTED in part and DENIED in part.  They are GRANTED only to the extent that the recommendation for punitive damages is not accepted;

3. The Defendants' Objections to Ruling on Motion for Sanctions, ECF No. 164, are DENIED;

4. The magistrate judge's Report and Recommendation, ECF No. 155, is otherwise ACCEPTED; and

5. A separate judgment will be entered herewith.

ENTER:   August 2, 2024

/s/  JAMES P. JONES
Senior United States District Judge